UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

BRANDON MARCUS RESCH,

          Plaintiff,

v.

HEIDI WASHINGTON et al.,

          Defendants.
_____/

Case No. 1:21-cv-293

Honorable Janet T. Neff

## **OPINION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint for failure to state a claim against Defendants Washington, Lindsey, and Cargor. The Court will also dismiss, for failure to state a claim, Plaintiff's access to the courts claim and Eighth Amendment claim regarding inadequate out-of-cell exercise time. Plaintiff's First Amendment and RLUIPA claims against Defendants Bush and Mulligan remain in the case.

**Discussion**

I.  **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Parnall Correctional Facility (SMT) in Jackson, Jackson County, Michigan. The events about which he complains, however, occurred at the Charles Egeler Reception & Guidance Center (RGC) in Jackson, Jackson County, Michigan.

Plaintiff initiated this action on April 2, 2021. (Compl., ECF No. 1.) In an opinion and order issued on October 12, 2021, the Court reviewed the complaint under Rule 21 of the Federal Rules of Civil Procedure and concluded that the following Defendants were misjoined: Defendants Campfield, Washington, Horton, Rewerts, Adamson, Beaulieu, Gonzolas, Allenbaugh, Labo, Wellman, Brunettea, Stavida, Rink, Buchanan, Purchase, Ray, Edlinger, Ferrell, Allen, Rideout, Freed, Erskine, Bartin, Sperling, Depue, Keck, Gable, Houghton, Holmes, Hoffman, Dine, Lambert, Ward, and Stott. (Op., ECF No. 11, PageID.149; Order, ECF No. 12, PageID.151.) The Court dismissed these Defendants without prejudice because they were misjoined. The Court also conducted a preliminary review of the complaint as required by the PLRA and dismissed Defendant Martin and Plaintiff's access to the courts claim and Eighth Amendment claim regarding inadequate out-of-cell exercise against Defendant Bush for failure to state a claim. (Op., ECF No. 11, PageID.149–50; Order, ECF No. 12, PageID.151.) Plaintiff's First Amendment and Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a), claims against Defendants Bush and Mulligan regarding their refusal to provide Plaintiff with a kosher diet remained in the case. (Op., ECF No. 11, PageID.150.)

Subsequently, Plaintiff filed an amended complaint against MDOC Director Heidi Washington and the following RGC officials: Warden Jeremy Bush, Deputy Warden Unknown Lindsey, Assistant Deputy Warden Unknown Cargor, and Food Service Director Unknown

2

Mulligan.[1] (Am. Compl., ECF No. 24, PageID.219–21.) In the amended complaint, Plaintiff retains his Eighth Amendment and RLUIPA claims regarding the refusal to provide him with a kosher diet, and he re-raises his access to the courts claim and Eighth Amendment claim regarding inadequate out-of-cell exercise, both of which the Court previously dismissed for failure to state a claim. (*See id.*, PageID.221–26.)

With respect to Defendants' refusal to provide Plaintiff with a kosher diet, Plaintiff alleges that he arrived at RGC on August 31, 2018, and immediately informed an unnamed correctional officer that he required a kosher diet. (*Id.*, PageID.221.) However, the unnamed correctional officer told Plaintiff "We don't do that here anymore." (*Id.*) Thereafter, on September 1, 2018, Plaintiff submitted "two separate written requests for a kosher diet" to the "RGC Chaplain." (*Id.*) Then, after being denied a kosher diet for "approx[imately] six consecutive days," Plaintiff requested a grievance form. (*Id.*, PageID.222.) On September 10, 2018, Plaintiff spoke with an inspector at RGC and "conveyed [his] continued inability to access a kosher diet," and "[t]he [i]nspector informed Plaintiff that the matter had been discussed between said [i]nspector and Defendant Bush, and that '[the] administration was working on it.'" (*Id.*)

On September 11, 2018, "after receiving no Notice of Receipt of Step I Grievance . . . , Plaintiff filed a subsequent Step I grievance regarding the kosher denial issue." (*Id.*) From August 31, 2018, through September 15, 2018, Plaintiff "formally petitioned the RGC Chaplain for assistance in obtaining a kosher diet six (6) separate times." (*Id.*, PageID.223.) At some point during September 2018, Plaintiff "spoke directly with Defendant Bush" and "informed

---

[1] Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, because Plaintiff had not previously amended his complaint, he was permitted to file his amended complaint "as a matter of course." Fed. R. Civ. P. 15(a). Plaintiff must seek leave of Court or Defendants' written consent to file any further amendments. *See id.*

[him] . . . of Plaintiff's continued inability to access a kosher diet within RGC." (*Id.*) Defendant Bush responded,

> We could get you a kosher tray from [Duane Waters] hospital, or even from across the street [from another local prison within Jackson, Michigan], but we aren't going through all of that trouble for just one prisoner. You'll be out of [RGC] soon enough. Just wait until you reach the next prison.

(*Id.* (brackets in original).)

On September 17, 2018, Plaintiff "wrote formal letters" to Defendants Bush, Lindsey, and Cargor "requesting each Defendant's professional assistance in obtaining a kosher diet." (*Id.*) On September 19, 2018, "Plaintiff was afforded access to the RGC Chaplain, whom in[] turn provided Plaintiff with a quasi-'test' (utilized by the MDOC to determine if a prisoner qualifies for a religious diet or not)." (*Id.*)

"Subsequent to Plaintiff's 'approval' to receive a 'religious diet,' he spoke with Defendant Mulligan, in an attempt at enlisting said Defendant's professional assistance in obtaining a diet that conformed with Plaintiff's religion (i.e., a kosher diet)." (*Id.*, PageID.224.) Defendant Mulligan responded, "You're the only Jew on the compound. Do you really think anyone is going to create a special religious diet just for you?" (*Id.*) "When Plaintiff indicated that a kosher diet was a mitzvot of his Orthodox Jewish religion, Defendant Mulligan went on to further state, 'I've already spoken with [Defendant Bush] and it's been decided we're not accommodating that/the Jewish diet here. Go file your grievances. This conversation is done.'" (*Id.* (brackets in original).)

Plaintiff states that "[a]t no time throughout Plaintiff's approx[imately] thirty-five days within the RGC facility was Plaintiff ever once afforded his First Amendment right to eat in conformity with his sincerely held Jewish mitzvot ('laws'), i.e., kosher." (*Id.*, PageID.223.)

Plaintiff contends that Defendant Washington's "failure-to-train and/or supervise the Defendants subordinate to herself, with respect[] to the violations of Plaintiff's rights as

4

enumerated herein, equally contributed to each violation as said Defendant knew or should have known that RGC was not providing Jewish/Muslim/Buddhist/Wiccan/Etc. prisoners their right to eat in conformity with their respective religious tenets/beliefs/mandates." (*Id.*, PageID.224.)

As to Plaintiff's access to the courts claim, he contends that "Defendant Bush's policies/practices governing Plaintiff's ability to only access up to ten legal materials/documents per seven days (via a Segregation Law Library Request form) stymied Plaintiff's right to access the courts." (*Id.*) Plaintiff alleges that his "ability to file his conditions of confinement claims (against the municipality of Macomb County, et al.)" and "[his] ability to file pro per motions/briefs (relevant to Plaintiff's criminal conviction out of the 16th Judicial Circuit Court) were hindered as a direct result of Defendant Bush's inadequate law/legal library and/or legal writer program." (*Id.*)

Further, Plaintiff alleges that "[b]ased upon the inadequate law library contained within RGC, Plaintiff's right to petition for redress, both civilly and criminally, [was] equally stymied based upon the actions and/or omissions thereof of Defendant Bush." (*Id.*, PageID.224–25.) Plaintiff states that prior to his arrival at RGC, he had "invoked his right to self-represent," and "[a]s such, Plaintiff did not obtain the representation of an appointed attorney, in relevance to his criminal appeal, etc., until several weeks after coming into Defendants Washington's and Bush's physical custody." (*Id.*, PageID.225.) Plaintiff also states that he "had not received any semblance of a Comprehensive Psychological Evaluation . . . at/on any date which preceded Plaintiff's denial to obtain the services of a legal writer," and "yet Plaintiff's request for said legal writer was 'denied' based solely upon the false purportation that Plaintiff's psychological diagnosis did not warrant Plaintiff being provided the services of a legal writer while located at RGC." (*Id.*)

5

With respect to Plaintiff's claim regarding his receipt of inadequate out-of-cell exercise time, he contends that "[t]hroughout the approx[imately] thirty-five or thirty-six days which Plaintiff was housed at RGC, Defendant Bush only afforded Plaintiff the ability to exercise outside of his assigned cell for periods of approx[imately] fifty minutes in length, once every two-to-three days." (*Id.*) Plaintiff states that "[t]his inability to access meaningful out-of-cell exercise greatly contributed to Plaintiff's sore/stiff muscles." (*Id.*) Plaintiff also states that "Defendant Bush's Prisoner Guide Booklet specifically prohibited Plaintiff from all forms of exercise while confined to his assigned cell, and further precluded even walking fast and/or running en route to/from the Dining Hall (for meals)." (*Id.*)

Further, Plaintiff alleges that "Defendant Bush failed to provide Plaintiff with any recreational equipment, aside from several basketballs, within all instances that Plaintiff was permitted outdoors." (*Id.*, PageID.226 (emphasis omitted).) Plaintiff also alleges that "the cell he was assigned to [at RGC] . . . was too confined, and packed too densely with cell furnishings . . . for Plaintiff . . . to disregard the Housing Unit Rules (afforded within the Prisoner Guide Book) and attempt any semblance of meaningful in-cell exercise." (*Id.*)

As relief, Plaintiff seeks compensatory and punitive damages, as well as declaratory relief. (*Id.*, PageID.226–27.)

**II.     Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

6

court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendant Washington

With respect to Defendant Washington, Plaintiff contends that Defendant Washington's "failure-to-train and/or supervise the Defendants subordinate to herself, with respect[] to the violations of Plaintiff's rights as enumerated herein, equally contributed to each violation as said Defendant knew or should have known that RGC was not providing

Jewish/Muslim/Buddhist/Wiccan/Etc. prisoners their right to eat in conformity with their respective religious tenets/beliefs/mandates." (Am. Compl., ECF No. 24, PageID.224.)

However, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300) (citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976); *Bellamy v.*

8

*Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff has failed to allege that Defendant Washington engaged in any active unconstitutional behavior. Further, Plaintiff has failed to allege any *facts* showing that Defendant Washington encouraged or condoned the conduct of her subordinates, or authorized, approved or knowingly acquiesced in the conduct. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendant Washington was personally involved in the events surrounding the failure to provide Plaintiff with a kosher diet, the limitations on Plaintiff's access to the law library, or the failure to provide Plaintiff with adequate out-of-cell exercise time during his incarceration at RGC. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See id.* at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's § 1983 claims against Defendant Washington are premised on nothing more than respondeat superior liability, his claims against Defendant Washington fail to state a claim.

### B. Religious Diet

Plaintiff alleges that Defendants Bush, Mulligan, Lindsey, and Cargor denied him his right to practice his religion in violation of the First Amendment and RLUIPA by refusing to provide him with kosher meals while he was housed at RGC. (Am. Compl., ECF No. 24, PageID.221–24.)

The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.* While "lawful incarceration brings about the necessary withdrawal or limitation of many

9

privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Plaintiff has sufficiently alleged his sincerely held religious beliefs and that the practice of following a kosher diet is a religious practice. The next consideration is "whether the challenged practice of the prison officials infringes on the religious belief . . . ." *Kent*, 821 F.2d at 1224–25. A practice will not be considered to infringe on a prisoner's free exercise unless it "places[s] a substantial burden on the observation of a central religious belief or practice . . . ." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *see also Welch v. Spaulding*, 627 F. App'x 479, 485 (6th Cir. 2015) (McKeague, J., dissenting) ("To violate the First Amendment, the diet must impose a substantial burden on the inmate's exercise of religion.").

"[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. Of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[A] 'substantial burden' is a difficult threshold to cross." *Id.* at 736. "[A] 'substantial burden' must place more than an inconvenience on religious exercise." *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult . . . ." *Id*.

10

The analysis of Plaintiff's RLUIPA claim parallels the analysis of his free exercise claim. In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). The term "religious exercise" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7).

The phrase "substantial burden" is not defined in RLUIPA. The Sixth Circuit Court of Appeals has relied upon the Act's legislative history to conclude that the term has the same meaning under RLUIPA as provided by the Supreme Court in its "free exercise" decisions. *Living Water*, 258 F. App'x at 733–34. Accordingly, a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (citations omitted); *Cutter v. Wilkinson,* 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise); *Marshall v. Frank*, 2007 WL 1556872, at *5 (W.D. Wis. May 24, 2007) (discussing that a substantial burden is one which renders religious exercise "effectively impracticable" (quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003))). A burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise," *see, e.g.*, *Konikov v. Orange Cnty.,* 410 F.3d 1317, 1323 (11th Cir. 2005), or does not "pressure the individual to violate his or her religious beliefs." *Living Water*, 258 F. App'x at 734. Such conclusions recognize that RLUIPA was not intended to create a cause of action in response to every decision which serves to inhibit or constrain religious exercise, as such

11

would render meaningless the word "substantial." *See Civil Liberties for Urban Believers*, 342 F.3d at 761.

Thus, under the First Amendment or RLUIPA, Plaintiff must allege that his religious exercise has been substantially burdened. Here, Plaintiff contends that he alerted Defendants Bush, Mulligan, Lindsey, and Cargor, either in person or via written "formal letters," to his need for a kosher diet pursuant to his "Orthodox Jewish religion." (Am. Compl., ECF No. 24, PageID.223–24.) After writing "formal letters" to Defendants Bush, Lindsey, and Cargor on September 17, 2018, two days later, on September 19, 2018, "Plaintiff was afforded access to the RGC Chaplain, whom in[] turn provided Plaintiff with a quasi-'test' (utilized by the MDOC to determine if a prisoner qualifies for a religious diet or not)." (*Id.*, PageID.223.) Plaintiff indicates that he received "'approval' to receive a 'religious diet,'" and he subsequently spoke with Defendant Mulligan "in an attempt at enlisting said Defendant's professional assistance in obtaining a diet that conformed with Plaintiff's religion (i.e., a kosher diet)." (*Id.*, PageID.223–24.) Defendant Mulligan responded, "You're the only Jew on the compound. Do you really think anyone is going to create a special religious diet just for you?" (*Id.*, PageID.224.) "When Plaintiff indicated that a kosher diet was a mitzvot of his Orthodox Jewish religion, Defendant Mulligan went on to further state, 'I've already spoken with [Defendant Bush] and it's been decided we're not accommodating that/the Jewish diet here. Go file your grievances. This conversation is done.'" (*Id.* (brackets in original).)

Based on the facts alleged in Plaintiff's amended complaint, the Court concludes that Plaintiff's allegations against Defendants Bush and Mulligan are sufficient to state a claim under the First Amendment and RLUIPA.

Plaintiff's allegations against Defendants Lindsey and Cargor, however, fail to state a claim under the First Amendment and RLUIPA. Plaintiff simply alleges that he wrote "formal letters" to Defendants Lindsey and Cargor, as well as Defendant Bush, on September 17, 2018, and two days later, on September 19, 2018, "Plaintiff was afforded access to the RGC Chaplain, whom in[] turn provided Plaintiff with a quasi-'test' (utilized by the MDOC to determine if a prisoner qualifies for a religious diet or not)." (*Id.*, PageID.223.) Plaintiff's allegations indicate that after he alerted Defendants Lindsey and Cargor to his need for a kosher diet, he was able to meet with the RGC Chaplain to determine whether he could receive a kosher diet. Plaintiff does not allege that Defendants Lindsey and Cargor were involved in the refusal to provide him with a kosher diet prior to his writing of the "formal letters" to them or the subsequent refusal to provide him with such diet after he received approval to do so. As such, Plaintiff fails to allege that Defendants Lindsey and Cargor burdened—much less substantially burdened—Plaintiff's practice of his religion. Therefore, Plaintiff fails to state a First Amendment or RLUIPA claim against Defendants Lindsey and Cargor. Because Plaintiff makes no other allegations against Defendants Lindsey and Cargor for any action that occurred at RGC, the Court will dismiss Defendants Lindsey and Cargor from the action with prejudice for failure to state a claim.

### C. Access to the Courts

Plaintiff next alleges that Defendant Bush denied him access to the courts by limiting his access to law library materials and the legal writer program at RGC. (Am. Compl., ECF No. 24, PageID.224–25.)

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The United States Supreme Court noted that in addition

13

to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (discussing that *Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.*

Here, Plaintiff's claim fails, as it did in his original complaint, because he identifies no actual injury to either his civil action against Macomb County or his criminal appeal caused by the limitations on his access to the law library and legal writer program. Plaintiff simply alleges that his "ability to file his conditions of confinement claims (against the municipality of Macomb County, et al.)" and "[his] ability to file pro per motions/briefs (relevant to Plaintiff's criminal conviction out of the 16th Judicial Circuit Court) were hindered as a direct result of Defendant Bush's inadequate law/legal library and/or legal writer program." (Am. Compl., ECF No. 24, PageID.224.) However, Plaintiff has not alleged and cannot allege that he suffered actual injury to any relevant litigation.

With respect to Plaintiff's civil case against Macomb County, Plaintiff cannot show actual injury to the prosecution of this case because he did not file the case until after he was transferred from RGC. *See* Compl., *Resch v. Mun. of Macomb Cnty.*, No. 2:18-cv-13607 (E.D. Mich. Nov. 19, 2018), (ECF No. 1); (*see also* Op., ECF No. 11, PageID.126 (discussing that, as set forth in Plaintiff's complaint, he was transferred to the Chippewa Correctional Facility from RGC on approximately October 5, 2018).) Moreover, any delay in filing the action, much less a 35-day delay, could not have prejudiced the timeliness of this action because the claims alleged in the civil case arose between November 2017 and August 2018, well within the statute of limitations. *See*

Compl., *Resch v. Mun. of Macomb Cnty.*, No. 2:18-cv-13607 (E.D. Mich. Nov. 19, 2018), (ECF No. 1).

Furthermore, with respect to Plaintiff's state criminal case, Plaintiff indicates that at the time that he entered RGC he had "invoked his right to self-represent," and thereafter, he was appointed counsel for his criminal appeal. (Am. Compl., ECF No. 24, PageID.225.) A prisoner who is represented by counsel has no freestanding right to access a jail law library. "[P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Lewis*, 518 U.S. at 351 (quoting *Bounds*, 430 U.S. at 825). An inmate's right of access to the courts is fully protected if he is represented by counsel. *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 104 (6th Cir. 1991); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (citing *Holt v. Pitts*, 702 F.2d 639, 640 (6th Cir. 1983)) (holding that, once counsel has been appointed, the state has fulfilled its constitutional obligation to provide access to the courts). Additionally, the Sixth Circuit has held that "by knowingly and intelligently waiving his right to counsel, the [prisoner] also relinquished his access to a law library." *United States v. Sammons*, 918 F.2d 592, 602 (6th Cir. 1990) (concluding that defendant's waiver of right to court-appointed counsel and decision to represent self in defense of criminal prosecution constituted waiver of right of access to law library); *Holt*, 702 F.2d at 640–41 ("The alternative avenues open to state authorities to protect a prisoner's right of access to the courts are precisely that—alternatives. The choice between alternatives lies with the state. A prisoner who chooses not to avail himself of the alternative provided has no basis—constitutional or otherwise—for complaint.").

Moreover, with respect to Plaintiff's assertion that he could not access the number of legal materials that he wished to have access to at any given time and that he should have received

16

access to the legal writer program at RGC, the Constitution protects a prisoner's right of access to the courts, not to the prison library or a prisoner legal assistance program. *Walker v. Mintzes*, 771 F.2d 920, 931 (6th Cir. 1985); *see also Lewis*, 518 U.S. at 351 (discussing that a sub-par library or legal assistance program does not establish relevant actual injury). Further, "[t]here is no constitutional right to any particular number of hours in the law library." *Thomas v. Campbell*, 12 F. App'x 295, 297 (6th Cir. 2001) (citing Walker, 771 F.2d at 932). And, as discussed above, Plaintiff has alleged no injury to his ability to access the courts. Accordingly, Plaintiff's access to the courts claim will be dismissed for failure to state a claim.

### D. Out-of-Cell Exercise

Plaintiff also alleges that Defendant Bush violated his Eighth Amendment rights because Plaintiff received inadequate time out of his cell to exercise, and when he was afforded out-of-cell exercise time, the provided exercise equipment was inadequate. (Am. Compl., ECF No. 24, PageID.225–26.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual

punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).

The Eighth Amendment entitles prisoners to exercise sufficient to maintain reasonably good physical and mental health. *See Walker*, 771 F.2d at 927. Thus, the Sixth Circuit has held that extreme limitations on outdoor exercise could potentially violate the Eighth Amendment. *See Rodgers v. Jabe*, 43 F.3d 1082, 1087–88 (6th Cir. 1995) (citing *Walker*, 771 F.2d at 927; *Patterson v. Mintzes*, 717 F.2d 284 (6th Cir. 1983)). Yet, the court has declined to find that minimum yard time is constitutionally required in all circumstances. *Rodgers*, 43 F.3d at 1087–88. Instead, the court has held that when yard time is extremely limited or denied altogether, the prison may be required to provide a legitimate penological purpose for the deprivation. *Id.* (citing *Patterson*, 717 F.2d at 289).

Here, Plaintiff alleges that he received out-of-cell exercise every two to three days. (Am. Compl., ECF No. 24, PageID.225.) Plaintiff also alleges that when he received out-of-cell exercise time, the recreational area had inadequate "recreational/exercise equipment" and only had "several basketballs." (*Id.*, PageID.226.) Further, Plaintiff contends that "Defendant Bush's Prisoner Guide Booklet specifically prohibited Plaintiff from all forms of exercise while confined to his assigned cell, and further precluded even walking fast and/or running en route to/from the Dining Hall (for meals)." (*Id.*)

Although it is clear that Plaintiff would have preferred to receive more out-of-cell exercise time, his allegations fall well short of an extreme limitation on exercise that might require prison officials to articulate a legitimate penological reason for the limitation. *See, e.g.*, *May v. Baldwin*, 109 F.3d 557, 565–66 (9th Cir. 1997) (concluding that a denial of out-of-cell exercise for 21 days did not rise to Eighth amendment violation); *Knight v. Armontrout*, 878 F.2d 1093, 1096 (8th Cir. 1989) ("Denial of recreation for a short period, per se, is not a constitutional violation."); *Davenport v. DeRobertis*, 844 F.2d 1310 (8th Cir. 1988) (upholding a 90-day segregation threshold before five hours of weekly out-of-cell exercise is required); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) (finding that there was no Eighth Amendment violation when plaintiff was held in segregation without outdoor exercise for 28 days). Accordingly, Plaintiff fails to state an Eighth Amendment claim regarding his out-of-cell exercise time, and this claim will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Washington, Lindsey, and Cargor will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's access to the courts claim and Eighth Amendment claim regarding inadequate out-of-cell exercise time. Plaintiff's First Amendment and RLUIPA claims against Defendants Bush and Mulligan remain in the case.

An order consistent with this opinion will be entered.

Dated: April 19, 2022           /s/ Janet T. Neff
                                Janet T. Neff
                                United States District Judge