UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRANDON MARCUS RESCH,

    Plaintiff,

v.

ARTHUR DUDLEY, CAMPFIELD,
*et al.*,

    Defendant.
_____/

Case No. 1:21-cv-293

Hon. Janet T. Neff

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by Brandon Marcus Resch (referred to as "plaintiff" or "Resch"), a prisoner in the custody of the Michigan Department of Corrections (MDOC). The relevant pleading is Resch's amended complaint (ECF No. 24). *See* Opinion (ECF No. 26, PageID.245). The incidents at issue in this lawsuit occurred at the Charles Egeler Reception & Guidance Center (RGC). *Id*. at PageID.244. Two defendants remain: RGC Warden Jeremy Bush (named as "Jermey Bush") and RGC Food Service Director Robert Mulligan (named as "Unknown Mulligan"). *Id*. at PageID.261. Resch arrived at RGC on or about August 31, 2018. His claim involves defendants' alleged refusal to provide him with a kosher diet while he was at the facility (approximately 35 days) in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a) ("RLUIPA"). *Id*. at PageID.244-246, 261. This matter is now before the Court on defendants' motion for summary judgment for failure to exhaust administrative remedies (ECF No. 34).

    **I.**    **Defendants' motion for summary judgment**

    **A.**    **Legal standard**

1

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.   Lack of Exhaustion

#### 1.   Exhaustion requirement

Defendants Bush and Mulligan contend that plaintiff Resch failed to exhaust the claims alleged against them.  The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust

2

available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id*. at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007).[1] A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id*. at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id*. at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where,

---

[1] Defendants' brief includes a copy of Policy Directive 03.02.130 with an effective date of March 18, 2019 (ECF No. 35-2). This is not the correct version of the grievance policy. Resch filed the relevant grievance(s) in 2018 pursuant to the July 9, 2007 version of the policy.

> why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id*. at ¶ R (emphasis in original).  The prisoner must send the Step I grievance to the appropriate grievance coordinator.  *Id*. at ¶ V.  If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator.  *Id*. at ¶ BB.  Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section.  *Id*. at ¶ FF.

### 3. Discussion

The issue before the Court is whether Resch properly exhausted his claims that defendants Bush and Mulligan violated his rights under the First Amendment and RLUIPA for failing to provide him with kosher food at RGC for about 35 days.

Defendants have identified three grievances which Resch appealed through Step III during his short stay at RGC.  The first grievance, RGC-18-09-183928B ("1839") (ECF No. 35-3, PageID.331-334) involved denial of access to a legal writer.  The second grievance, RGC-18-09-1853-28i ("1853") (ECF No. 35-3, PageID.328-330) involved an unidentified corrections officer denied him a meal in the chow hall after Resch "pointed out to the large African-American food steward that the sporks should not be accessable [sic] to the prisoner population".  The third grievance, RGC-18-09-1866-27b ("1866") (ECF No. 35-3, PageID.325-327) referenced the denial of kosher meals.  Grievance 1866 is the only grievance related to Resch's claims in this lawsuit.

Grievance 1866 was dated September 15, 2018, and referred to an incident which occurred on September 14, 2018.  *Id*. at PageID.327.  In this grievance, Resch wrote,

> As stated in the grievance I previously filed on this exact issue, Grievant's sincerely held religious beliefs are being ignored in start contrast to the Free Exercise clause of the First Amendment of the United States Constitution, as well

4

as 42 U.S.C. § 2000bb, and 42 U.S.C § 2000cc-1, in that Grievant has been denied a Kosher meal every day since his arrival on August 31, 2018.

REDRESS SOUGHT: A Kosher diet in conformity with my religious beliefs.

*Id*.

Resch did not direct the grievance at any particular person.  In the portion of the grievance stating his attempts to resolve this issue, Resch stated:

Spoke with African-American woman doing my financial screening at intake on August 31, 2018; spoke with Officer Foster at intake on August 31, 2018; kited the RGC Chaplain six times on six different dates; Grieved this exact issue on September 6, 2018; spoke with Inspector at my cell assignment on September 10, 2018, all to no avail.

*Id*.  The grievance was rejected on September 21, 2018, because it raised "content of Department Policy 05-03-150 ["Religious beliefs and practices"]." *Id*.

Resch's Step II appeal dated November 8, 2018, was rejected as "untimely". Grievance 1866 at PageID.326.  Resch knew that the Step II appeal was filed late.  In an attempt to avoid a rejection as untimely, Resch stated, "Please take notice that Grievant did not obtain this appeal form until the morning of today's date [November 8, 2018] so submitting same by 'October 08, 2018' was not possible." *Id*.  Resch also contested the rejection of the original grievance, stating that "[t]he issue grieved was not subject to rejection, and that "Grievant was denied his right to practice his religion in conformity with his sincerely held religious belief from August 31, 2018 – through – October 04, 2018." *Id*.

In his Step III appeal, plaintiff stated that "policy cannot conflict with Grievant's constitutional rights" and that the Step II appeal was filed late because he did not receive the Step II Form until November 7, 2018.  *Id*.  The MDOC upheld the rejection.  *Id*. at PageID.325.

Defendants contend that Resch did not properly exhaust Grievance 1866 because the grievance was rejected at Step I for grieving the contents of policy and rejected at Step II as

5

untimely. Defendants' Brief (ECF No. 35, PageID.289). As discussed, Resch appealed the rejection of the grievance, stating he was grieving the denial of a religious diet, not the content of a policy. Resch's argument regarding the Step I rejection may have merit.[2]

However, this Court does not address the propriety of a Step I rejection unless the prisoner properly exhausted the MDOC's decision to reject that grievance. In this regard, Policy Directive 03.02.130 provides that if a grievance is rejected, a prisoner may appeal the rejection through Steps II and III:

> A grievant whose grievance is rejected may appeal the rejection to the next step as set forth in this policy. A new grievance shall not be filed regarding the rejection.

*Id*. at ¶ I.  Here, Resch did not properly exhaust the grievance because the MDOC rejected his Step II appeal as untimely. Resch received the Step I response on September 21, 2018 (PageID.327), was required to submit the appeal on October 8, 2018 (PageID.326), but submitted the Step II appeal on November 8, 2018 (*Id*.).[3] In short, Resch submitted the Step II appeal about one month late. Policy Directive 03.02.130 ¶ G provides that an untimely grievance may be rejected, stating in pertinent part:

---

[2] Defendants apparently rely on Policy Directive 03.02.130, which provides in pertinent part,

"Grievances that raise the following non-grievable issues also shall be rejected: 1. A grievant may not grieve the content of policy or procedure except as it was specifically applied to the grievant. If a CFA prisoner has a concern with the <u>content</u> of a policy or procedure, s/he may direct comments to the Warden's Forum as provided in PD 04.01.150 'Prisoner Housing Unit Representatives/Warden's Forum'." Policy Directive 03.02.130 ¶ F.1. (emphasis in original). Based on this record, it appears that the MDOC improperly rejected Grievance 1866. Resch did not grieve specific content of Policy Directive 05.03.150. Rather, Resch complained that he did not receive a religious diet while at RGC.

[3] Policy Directive 03.02.130 ¶ BB (eff. July 9, 2007) provided that,

"To file a Step II grievance, the grievant must request a Prisoner/Parolee Grievance Appeal (CSJ-247B) from the Step I Grievance Coordinator and send the completed form to the Step II Grievance Coordinator designated for the facility, field office, or other office being grieved within ten business days after receiving the Step I response or, if no response was received, within ten business days after the date the response was due, including any extensions."

6

> A grievance also may be rejected for any of the following reasons: . . . 3. The grievance is filed in an untimely manner. The grievance shall not be rejected if there is a valid reason for the delay; e.g., transfer.

Policy Directive 03.02.130 ¶ G.3.  While Resch could potentially have a valid reason for delay because he was transferred from RGC, he has provided no factual basis for the delay.

In his response, Resch points out that he was transferred from RGC to the Brooks Correctional Facility (LRF) on October 5, 2018.  Resch's Response (ECF No. 37, PageID.356). Defendants do not dispute that Resch was transferred on that date.  While it is undisputed that Resch was transferred during the Step II appeal period, he provides no explanation for filing the appeal one month late.  In an affidavit attached to his response, Resch stated that he "timely requested a Prisoner/Parolee Grievance Appeal Form, but was not provided said appeal form until the evening of November 7, 2018."  Resch Aff. (ECF No. 37-1).

Resch's affidavit does not create a genuine issue of material fact with respect to exhaustion.  Resch's affidavit appears to be a combination of an unsworn declaration under penalty of perjury (*see* 28 U.S.C. § 1746) and a sworn statement under oath. Section 1746 provides in pertinent part that,

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
> (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)".

28 U.S.C. § 1746(1).  Here Resch does not comply with the requirements of § 1746.  Resch does not declare that the statements in the document are "true and correct" as required by the statute.

7

Rather, Resch dilutes this straightforward requirement declaring that "the foregoing is true and accurate to the best of my knowledge and belief." Resch Aff. at PageID.373.

In addition, even if construed as an affidavit, Resch's statement does not establish that a genuine issue of material fact exists with respect to his Step II appeal. Summary judgment cannot be granted on facts based upon a person's "belief." *See Ondo v. City of Cleveland*, 795 F.3d 597, 605 (6th Cir. 2015) ("statements made on belief or on information and belief, cannot be utilized on a summary-judgment motion") (internal quotation marks omitted).

Furthermore, Resch's statement that he "timely requested" a Step II appeal form "but was not provided said appeal Form until the evening of November 07, 2018" is a conclusory statement. Affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment. *Sigmon v. Appalachian Coal Properties, Inc.*, 400 Fed. Appx, 43, 49 (6th Cir. 2010). *See Stine v. State Farm Fire & Casualty Company*, 428 Fed. Appx. 549, 550 (6th Cir. 2011) (a "conclusory affidavit bypasses the specific-facts requirement of Federal Rule of Civil Procedure 56 necessary to forestalling summary judgment").[4] In short, Resch failed to properly exhaust Grievance 1866 because his Step II Appeal was untimely.[5]

Based on this record, Resch did not properly exhaust a grievance against defendants Bush or Mulligan with respect to the incidents alleged in the amended complaint. *Jones*, 549 U.S.

---

[4] In reaching this determination, the Court notes that Resch's affidavit refers to an exhibit, *i.e.*, Resch filed a grievance on October 2, 2018, asking for a Step II Appeal Forms for a number of previously filed grievances. *See* Grievance RGC-18-10-02-006-11G ("006") (ECF No. 37-3, PageID.377). However, there is no evidence as to how the MDOC responded to this grievance requesting forms. Resch neither provided a copy of the MDOC's <u>attached</u> response to Grievance 006, nor explained how the MDOC responded to his request.

[5] Defendants also contend that Resch failed to properly exhaust Grievance 1866 because the grievance did not name either of them as required by Policy Directive 03.02.130. *See* Defendants' Brief at PageID.288-289. The issue before the Court is whether Resch properly exhausted the MDOC's decisions to reject Grievance 1866 as ungrievable at Step I and untimely at Step II. Defendants provide no explanation as to how Resch's failure to name defendants in a rejected grievance fits into the scheme of the PLRA exhaustion requirement.

at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendants' motion for summary judgment should be granted.

### IV. Recommendation

For all of these reasons, I respectfully recommend that defendants Bush and Mulligan's motion for summary judgment (ECF No. 34) be **GRANTED** and that this action be terminated.

Dated: November 7, 2022                              /s/ Ray Kent
                                                     RAY KENT
                                                     United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).